## BALWERK v. DURGER ET AL.

1. **Title to Real Estate:** AS BETWEEN FATHER AND SON BEARING THE SAME NAME: EVIDENCE CONSIDERED. A father and son bore the same name, and used no mark of distinction in writing their names. While the father yet lived in a distant state, the son negotiated for the purchase of the land in question, and took a deed to the name common to himself and his father, and gave his notes and a mortgage on the land to secure deferred payments; but, upon consideration of all the evidence, (see opinion,) *held* that the land belonged to the father, and that the execution of a sheriff's deed to the defendants, pursuant to a sale upon execution against the son, was properly enjoined;—there being no evidence of fraud, nor that credit had been extended to the son upon the belief that he owned the property.

Balwerk v. Durger et al.

*Appeal from Kossuth Circuit Court.*

THURSDAY, April 24.

THE plaintiff, claiming to be the owner of certain land described in the petition, brought this action to restrain the execution of a deed to the defendants by the sheriff, in pursuance of a sale under an execution against William Balwerk, Jr. The allegations of the petition were denied. The court found for the plaintiff, and granted the relief asked. The defendants appeal.

*H. S. Vaughan*, for appellants.

*J. H. Hawkins*, for appellee.

SEEVERS, J.—The plaintiff is the father of William Balwerk, Jr. At one time they were both residents of New York. The son came to Iowa about the year 1878, and purchased the land in controversy. He paid, as we understand, $35 in cash, and gave his notes, secured by a mortgage executed by him on the land, to secure the unpaid purchase-money. The land was conveyed to William Balwerk, and up to that time neither the plaintiff nor his son, when signing his name or at any other time, used any words to distinguish the one from the other. They both testify that the land belongs to the plaintiff, and that he paid the purchase-money, including the $35. That is, they testify that the plaintiff sent the $35 to his son, and that it was the money of the plaintiff. About one year after the purchase, the plaintiff left New York and came to this state and entered into possession of the land. But the son, who is unmarried, also, as we infer from the evidence, was in possession of the real estate, and, as we believe, he has sold at least some of the crops grown thereon. But in explanation of this fact it should be stated that the Balwerks are Germans, and that the plaintiff, as he testifies, does not understand the English language sufficiently to enable

him to transact business.   Several witnesses introduced by the
defendants testify to declarations made by William Balwerk,
Jr., which are inconsistent with the theory that the plaintiff
is the owner of the land in controversy.   None of these
declarations were made in the presence of the plaintiff, and
they are denied by William Balwerk, Jr.   But the prepon-
derance of the evidence in this respect is against him.   The
plaintiff is in no respect impeached, and, if he paid for the
land and it is his property, it should not be sold for his son's
debt.

   The only issue in this case is whether the plaintiff or his
son owns the land in controversy.   Fraud is neither alleged
nor established.   Nor is it alleged or established that credit
was extended to Balwerk, Jr., on the faith or belief that he
owned the property.

   We cannot disregard the evidence of the plaintiff, and, as
he is not impeached or contradicted, and the story told by him
is not improbable, fail to give credit thereto.

   The material circumstances against the plaintiff's theory is
the existence of the note and mortgage to secure the purchase-
money by Balwerk, Jr., without explanation why he did so.
But this fact does not have the significance which it would,
if it appeared that he was a man who understood the proper
way of doing business.   Again, he of course had confidence in
his father, and, if executed by the latter, the note and mortgage
would have to have been sent to him in New York.   This
would have caused delay; and we can readily conceive why,
under the circumstances, the note and mortgage were exe-
cuted by Balwerk, Jr.   Besides this, at most, it was but a
representation made in the absence of the plaintiff, and which,
therefore, was not binding on him.   For the reasons stated,
we believe the judgment of the circuit court to be correct.

                                        AFFIRMED.